PEOPLE v. CARLOS.

1. SEDUCTION—PROMISE TO MARRY—EVIDENCE.

As a foundation for a criminal prosecution for seduction, under a promise of marriage, it is essential to prove an unconditional promise: a statement that the accused would marry complaining witness if pregnancy resulted does not sustain the charge, as such a promise has no tendency to overcome the natural sentiment of chastity.[1]

[1] Upon the question of promise of marriage conditioned on pregnancy as affecting seduction, see note in 51 L. R. A. (N. S.) 809.

2. SAME—TRIAL—CROSS-EXAMINATION—EVIDENCE.

> Where the complaining witness testified in justice's court that the accused agreed to marry her if she should become pregnant, and later, in circuit court, testified that he promised unconditionally to marry her, the attorney for the respondent should have been allowed considerable latitude in the cross-examination of such witness, and the trial court committed prejudicial error in refusing to permit him to ask the witness whether the promise was or was not based on the said condition, although he had already examined the witness along the same line, and the question was objected to on the ground that she had been fully questioned as to the point.

3. SAME—REQUESTS TO CHARGE—TRIAL.

> The accused was also entitled to have the jury instructed, as requested by him, that if the promise made was, in fact, as she had testified in the preliminary examination, upon the condition that if anything happened, respondent would marry her, the verdict should be for acquittal.

Error to Genesee; Wisner, J. Submitted November 5, 1914. (Docket No. 157.) Decided December 18, 1914.

Robert Carlos was convicted of seduction. Reversed.

*Grant Fellows*, Attorney General, *Clifford A. Bishop*, Prosecuting Attorney, and *William W. Blackney*, Assistant Prosecuting Attorney, for the people.

*Lee & Parker*, for respondent.

STEERE, J. At the February, 1914, term of the circuit court of Genesee county respondent was tried and convicted of having, on a certain day of the previous month of September, seduced an unmarried woman named Bessie Howk. The offense was charged under section 11694, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 14779), which provides that it shall be a criminal offense punishable by imprisonment or fine for

any man to "seduce and debauch an unmarried woman."

The numerous assignments of error for which a reversal is asked range over and center around the propositions that a verdict should have been directed because the facts proven did not establish the offense charged; because of unwarranted statements by the prosecuting attorney and the attitude of the court in assisting the prosecution during the trial; because of erroneous rulings in the admission and rejection of testimony; and particularly because of errors in the charge and refusal to give respondent's requests, in the light of such rulings upon the testimony.

It was and is the claim of the prosecution that an unequivocal promise to marry was the inducement by which the offense was accomplished. It is contended in behalf of respondent that it was, as shown by prosecutrix's own testimony, at most but a conditional promise to marry her in the event she became pregnant; that seduction cannot be predicated upon such a promise, and a verdict should have been directed for the defense; that, even conceding the testimony raised an issue in that particular, the court erroneously curtailed cross-examination of prosecutrix and failed to properly instruct the jury upon such issue. The last contention calls for serious consideration. We are well satisfied there was testimony in the case tending to prove the essential facts constituting the offense charged, the weight of which was for the jury under carefully guarded instructions, and the court committed no error in refusing to direct a verdict for the defense.

Stated in outline, testimony introduced by the prosecution showed, or tended to show, that at the time of the alleged offense the prosecutrix and respondent both resided in the city of Flint on different streets. He was a recent arrival, and had located in a rooming

house on a street in a neighborhood, where there were fortune tellers, living with a woman called "Princess Carlos," who was practicing the art of palmistry. They represented themselves to their landlady and others as husband and wife. Prosecutrix had been a resident for about two years and was working as a domestic in a private family. She was a woman 26 years of age, who had lived and worked as a domestic in Chicago, Flint, and other places since she was 11 or 12 years old. She was of scant mental vigor and overcredulous, as her manner of testifying and contradictory statements indicate, and is shown to have first met respondent when visiting the neighborhood where he resided to consult a nearby fortune teller named Mann in regard to some of her love affairs. While stopping on the sidewalk to read a sign of a hand on a post she saw respondent on the porch of what proved to be his and Princess Carlos' residence, and he accosted her. Either divining or being informed of her mission, he invited her in to consult the Princess Carlos, who he stated was his mother. She then went in to have a talk with the woman and gave her a dollar for a "reading," which, it so happened, was interrupted by an officer appearing on the scene and taking the Princess to the city hall. She accompanied the officer and Princess to the steps of the city hall, not knowing, as she states, the Princess was under arrest, and being advised by the officer that she did not have to go, she then went home. In the evening she returned to the house where the reading was interrupted, and found they were not in, but later met respondent on the street and finally went to his boarding house with him. The acquaintance thus begun rapidly ripened into an intimacy resulting in an engagement and her seduction that night. On direct examination she was asked and answered:

"*Q.* Did he ever take any improper liberties with you?

"*A.* Yes, in the room.   *   *   *

"*Q.* Did he ever succeed in having intercourse with you?

"*A.* Yes, under the promise of marriage, the very same night.

"*Q.* Is that the way I understand the matter, he did not succeed in having intercourse with you until after he had promised to marry you?

"*A.* Yes.

"*Q.* Would you have yielded to his embraces had he not promised to marry you?

"*A.* No."

The record contains much more of her testimony along this line, bearing upon their intimate relations, to the effect that she was not certain whether it was the first night, nor of the date; that she only yielded because of his repeated promises to marry her; that in anticipation of their marriage she gave him her wages; that he explained the absence of his mother by claiming she was in Lansing to get a license for her palmistry; and that their intimacy resulted in her getting in a delicate condition, after which he disappeared.

Being questioned in cross-examination as to their conversation and promises made by respondent at the time of the alleged seduction, prosecutrix stated that she told him she would not have intercourse with him because she was afraid she would get into trouble; and, being asked if he did not tell her if anything happened he would marry her, she at first answered: "No, he promised to marry me." When the question was repeated, reference being had to her testimony in justice's court, after remarking that she might have made a mistake, she answered:

"Yes; he didn't say that then. He promised to marry me—then told me that afterwards."

Later attention was called to her testimony taken on the preliminary examination in justice's court, and,

183 Mich.—18.

portions of it being read to the effect that it was on account of such conditional promise that she consented to the intercourse, and the following question was finally asked her:

"*Q.* Now, witness, the agreement with Mr. Carlos and you was, in case you became pregnant he would marry you?"

—which was objected to by opposing counsel "as having been gone over twice and ruled out twice by the court," whereupon the court said: "That is true. I sustain the objection"—thus ending the inquiry upon that branch of the case.

On behalf of respondent the court was especially requested to instruct the jury upon the question of a conditional promise, and, amongst others, the following request was presented and refused:

"I further charge you that, if the testimony given by the complaining witness in justice's court is true and the promise of marriage relied upon in this case was that the respondent should marry prosecutrix should she become pregnant, [it] is not seduction."

The court, in his charge, recognized the general rule, but in language which, it is urged, not only failed to advise the jury of its application to this case, but amounted to an intimation that it was of little importance. The portion of the charge where the subject is referred to is as follows:

"Now, our courts have held that it is not necessary even that there should be a promise of marriage in order to constitute the offense charged in this case, seduction, that any deceit or any species of persuasion that leads the mind of the woman astray and leads her from the paths of virtue by some inducement held out to her, the courts hold that is seduction, but they do hold that where it is based purely and only upon a promise to marry in case the prosecutrix should become pregnant, that promise, a bare promise of that kind, will not constitute the offense of seduction. But in this case, if you find beyond all reasonable doubt

that this girl was virtuous before that time, and the law presumes that she was, and I do not recall any testimony in this case that she was not, then you further find that she objected to intercourse with this man and stated to him that she would not have intercourse unless he would agree to marry her, and, having made that statement, he then had intercourse with her under a promise that he would marry her, then the offense would be complete."

In *People* v. *Smith*, 132 Mich. 58 (92 N. W. 776), where it is held that a respondent cannot be convicted of seduction when the only inducement to procure the illicit intercourse was a promise to marry the woman if she became pregnant, it is said:

"Such a promise has no tendency to overcome the natural sentiment of virtue and purity. The woman who yields upon such a promise is in no better position than as though no promise whatever had been made. No wrong is done her if she is put in the class with those who commit the act to gratify their desire. She was willing to lose her virtue if some provision was made to conceal its loss."

The testimony of the prosecutrix made this question a pertinent and important one in the case, upon which the defense was not only entitled to fully examine her, but was also entitled to have the jury fully instructed as to their duty, according as they found the facts on that particular point.

It was shown that prosecutrix testified in her preliminary examination before the justice that respondent had promised, if anything happened to her, in the particular mentioned, he would marry her, and that it was on account of such promise she consented. On the trial she testified that his promise was unconditional; that she might have made a mistake in her previous testimony, but he made the positive promise, and "then told me that afterwards." The record shows that the defense was allowed to partially examine her upon such apparent contradictions, and then

when the direct and legitimate question squarely covering that issue was asked, the court sustained an objection to it on the ground that it had already been gone over twice and ruled out twice by the court, making, according to the statement of the prosecuting attorney and court, in the presence of the jury, three times in all that such inquiry was held inadmissible. The record before us may be incomplete, for it fails to disclose that this question had twice before been asked or ruled upon, but it was so stated by court and counsel, and further inquiry was stopped by the ruling referred to. With that as the last word in examination of the witness as to a conditional promise, it cannot be said that a bare statement of the general rule upon the subject in the charge, in the connection it was made, sufficiently advised the jury of its relevancy to the case, and the manner in which it was their duty to consider it when passing upon the testimony. Conceding that in the objection it was intended to say, and the court in its ruling intended to hold, and by what was said all there understood that the subject had been twice before gone over and exhausted to a point where it was within the discretion of the court to restrain annoying and time-consuming repetition (a state of affairs, however, which we cannot find the record discloses), it was nevertheless incumbent upon the court, in view of what had occurred and the testimony before it, to give defendant's request upon that subject, and to more fully and unequivocally instruct the jury upon that material issue. The line of inquiry to which the rejected question relates was relevant and material under the law of seduction, the question was pertinent and in proper form to be asked upon cross-examination, and upon the face of this record we can discover no reason for its rejection, and are constrained to conclude that the ruling sustaining such objection was prejudicial error.

Of the remaining assignments of error, those which might, under other circumstances, call for serious consideration involve questions not likely to arise upon a retrial, and we, therefore, refrain from discussing them.

For the foregoing reasons we are impelled to the conclusion that the present verdict and judgment of sentence cannot be sustained. They are therefore set aside, and a new trial granted.

MCALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.